UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/04/2022
```

------------------------------------------------------------------X
:
DENISE LOHNN, Executor of the Estate of Jorgen    :
Lohnn, Deceased,    :
   :
          Plaintiff,    :          21-cv-6379 (LJL)
   :
     -v-    :       MEMORANDUM AND
   :            ORDER
International Business Machines Corp.,    :
   :
          Defendant.    :
   :
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendant International Business Machines Corp. ("IBM" or "Defendant") moves to maintain under seal documents filed in support and in opposition to the motion for summary judgment of plaintiff Denise Lohnn (as Executor of the Estate of Jorgen Lohnn, Deceased) ("Plaintiff") and to keep redacted the information it contends is confidential in the publicly filed versions of those documents.  Plaintiff opposes the motion.  The parties have filed on the docket many letter motions and letters regarding sealing.  *See* Dkt. Nos. 13, 20–22, 31, 34, 38–40.  The documents at issue are:

- Plaintiff's motion for summary judgment, Dkt. Nos. 14, 17;

- Plaintiff's statement of material facts in support of the motion for summary judgment, Dkt. Nos. 15, 18;

- Plaintiff's declaration of Shannon Liss-Riordan ("Liss-Riordan"), Dkt. Nos. 16, 19;

- Plaintiff's exhibits to the declaration of Liss-Riordan, Dkt. Nos. 16-5 to 16-8, 19-5 to 19-8;

- Defendant's response to Plaintiff's statement of material facts in support of the motion for summary judgment, Dkt. Nos. 28–29;

- Plaintiff's reply in support of the motion for summary judgment and in opposition to Defendant's cross-motion to dismiss, Dkt. Nos. 32, 36;

- Plaintiff's declaration of Liss-Riordan in support of the motion for summary judgment, Dkt. Nos. 33, 37; and

- Plaintiff's exhibits to the declaration of Liss-Riordan that were wholly filed under seal, Dkt. Nos. 16-10 to 16-44, 19-10 to 19-44.

*See also* Dkt. No. 38 (listing documents that were filed under seal and publicly with redactions).

Defendant requests that the Court leave the redactions in place pending resolution of the underlying dispute, *see, e.g.*, Dkt. No. 20 at 3; Dkt. No. 34 at 2, or to stay decision on unsealing pending the Court's ruling on Defendant's motion to dismiss, *see* Dkt. No. 39 at 1. Alternatively, if the Court disagrees with Defendant's position, Defendant asks the Court to stay its decision so that Defendant may seek appellate review.  *See* Dkt. No. 20 at 3; Dkt. No. 22 at 2; Dkt. No. 34 at 3; Dkt. No. 39 at 1–2.  Plaintiff takes the position that the documents do not satisfy the standards in this Circuit for confidentiality and accordingly should be made immediately publicly accessible.  *See, e.g.*, Dkt. No. 21 at 6.

For the following reasons, the Court grants IBM's motion in part and denies it in part. The Court denies the motion to the extent that it seeks a blanket order maintaining under seal documents and information in this Court simply because it was conveyed in arbitrations that were subject to a confidentiality agreement.  It grants the motion to the extent that IBM seeks more limited redactions necessary to protect privacy interests of IBM or other third parties.

## BACKGROUND

### I.    The Complaint, Case Management Plan, and Summary Judgment Motion

On July 27, 2021, Plaintiff filed this action seeking a declaratory judgment that certain provisions in the arbitration agreement Plaintiff's decedent signed with IBM were invalid and unenforceable because they prevented Plaintiff from effectively vindicating the rights of her

deceased husband under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

§ 621 *et seq*.  Dkt. No. 1 (the "Complaint").  This case is one of many that have been filed in this

District seeking essentially the same relief but on behalf of different parties and sometimes

involving different facts.  Other actions challenging IBM's arbitral confidentiality provision are

pending before Judges Furman, Koeltl, and McMahon.  *See, e.g.*, *In Re: IBM Arb. Agreement

Litig.*, 21-cv-6296 (S.D.N.Y.) (Furman, J.); *Chandler v. Int'l Bus. Machs. Corp.*, 21-cv-6319

(S.D.N.Y.) (Koeltl, J.); *Lodi v. Int'l Bus. Machs. Corp.*, 21-cv-6336 (S.D.N.Y.) (Koeltl, J.);

*Tavenner v. Int'l Bus. Machs. Corp.*, 21-cv-6345 (S.D.N.Y.) (McMahon, J.).

Plaintiff's husband was an employee of IBM for about fifteen years until he was

terminated in 2016 at the age of fifty-seven.  *Id.* ¶ 7.  He died thereafter from suicide.  *Id.*

Summarized broadly, the Complaint alleges that he was the victim of a widespread campaign at

IBM orchestrated from the top to replace its older workforce with younger employees so that the

demographics of its employee population would more closely match the younger demographics

of IBM's newer technology competitors.  *Id.* ¶¶ 8–9.  Plaintiff intends to bring an action against

IBM under the ADEA.  Because Plaintiff's husband signed IBM's form arbitration agreement,

Plaintiff intends to do so in an arbitral forum.

Plaintiff is represented by counsel who has prosecuted many similar actions against IBM

in arbitration.  In those arbitrations, counsel has obtained allegedly explosive evidence that

would prove Plaintiff's claim.  Plaintiff complains that IBM has taken the position that such

information, which would prove her case, may not be used because of the confidentiality

provision governing those other arbitrations.  IBM knows the information; Plaintiff and her

counsel know the information; but IBM has taken the position that the arbitrators should not

know it and has prevailed on that argument in several prior arbitrations.  IBM filed the instant

sealing motions to keep confidential from the public any information exchanged in those arbitrations, the positions taken by IBM and the employees in those arbitrations, and the outcome of those arbitrations.

On October 15, 2021, in lieu of an initial pretrial conference to set a schedule for discovery, the parties submitted a joint proposed case management plan and scheduling order. Dkt. No. 10.  The parties jointly proposed a schedule for filing motions, which had Plaintiff filing first:  Plaintiff would file a motion for summary judgment by October 28, 2021; Defendant would file an opposition to that motion and a cross-motion to dismiss by November 18, 2021; Plaintiff would respond by December 9, 2021; and Defendant would respond by December 23, 2021.  *Id.*  The Court approved and signed the case management plan.  Dkt. Nos. 11–12.

The parties filed the motion papers in accordance with the schedule set forth in the case management plan.  On October 28, 2021, Plaintiff filed her summary judgment motion.  Among other arguments in the motion, Plaintiff contends that the confidentiality provision in the arbitration agreement—as IBM has interpreted it—has prevented her from effectively vindicating her husband's rights under the ADEA and thereby has frustrated Congress's purposes in passing the ADEA.  Although ostensibly intended to afford both parties a more informal and confidential forum in which to litigate federal age discrimination issues, Plaintiff contends that the agreement and the arbitration clause in general have been used by IBM to prevent claimants from obtaining and using the evidence they would need to make their claims, making the ADEA a hollow remedy.  Plaintiff argues that the clause should not be interpreted and applied in such a way that would prevent her from using that evidence in the arbitration.

The confidentiality clause—which the parties have not filed under seal—is broad.  Although it starts with the notion that proprietary information, trade secrets, and sensitive

information should be protected, it sweeps more broadly to arguably cover everything that takes place in the arbitration (with no apparent exception for information that is independently learned by a party to the arbitration or that is otherwise public).  Tellingly, though, it is qualified in one respect.  Although it prohibits parties generally from disclosing information from the arbitration proceeding (including in other confidential proceedings), it permits public disclosure when necessary to confirm or challenge an award or when otherwise required by law or judicial decision.  It provides:

> Privacy and confidentiality are important aspects of arbitration.  Only parties, their representatives, witnesses and necessary administrative staff of the arbitration forum may attend the arbitration hearing.  The arbitrator may exclude any non-party from any part of a hearing.
>
> To protect the confidentiality of proprietary information, trade secrets or other sensitive information, the parties shall maintain the confidential nature of the arbitration proceeding and the award.  The parties agree that any information related to the proceeding, such as documents produced, filings, witness statements or testimony, expert reports and hearing transcripts is confidential information which shall not be disclosed, except as may be necessary to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its enforcement, or unless otherwise required by law or judicial decision by reason of this paragraph.

Dkt. No. 30-1.

Plaintiff's memorandum in support of her summary judgment motion and Plaintiff's Local Rule 56.1 statement set forth certain information that IBM had claimed was subject to the confidentiality provision.  According to IBM, that information from previous arbitrations could not be used in Plaintiff's arbitration, but Plaintiff claimed it was necessary to make her claim under the ADEA.  These summary judgment papers also cited to the positions taken in those prior arbitrations by IBM and by counsel for the claimants.

II.     **The Motions to Seal**

Alongside the summary judgment motion, Plaintiff filed a motion, on IBM's behalf, seeking permission to file the summary judgment motion and accompanying declaration and exhibits under seal.  Dkt. No. 13 at 1; *see also* Dkt. Nos. 14–16 (sealed summary judgment papers).  Plaintiff stated that she believed that the documents should be publicly filed under the decision of this Circuit in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006).  But she explained that Defendant had contended that the documents contained information that fell under the scope of the confidentiality provision.  Plaintiff asked that the documents be accepted and maintained preliminarily under seal until Defendant had the opportunity to respond to the argument that they should be publicly disclosed.  Dkt. No. 13 at 1.  Along with the sealed documents, Plaintiff publicly filed redacted versions of the documents with all information that IBM contended was confidential redacted and only the information both parties agreed was non-confidential unredacted.  *Id.*; *see also* Dkt. Nos. 17–19 (publicly filed redacted versions).

Defendant filed a submission on November 1, 2021, arguing that the full motion papers should be maintained under seal.  Dkt. No. 20 at 1.  Defendant did not argue that any of the redactions were necessary to protect the privacy of any individuals or the confidentiality of proprietary information, trade secrets, or other sensitive information.  Instead, Defendant argued broadly that the information that it had redacted in Plaintiff's motion for summary judgment should be withheld from disclosure to the public because it was subject to the confidentiality agreement that applied to the arbitration.[1]  Defendant requested that the Court resolve the challenge to the confidentiality provision before deciding which materials should remain

---

[1] Defendant also invoked Judge Furman's decision to keep redactions in place pending a decision on the underlying merits motion.  Dkt. No. 20 at 1 (citing *In Re: IBM Arb. Agreement Litig.*, 21-cv-6296 (S.D.N.Y.)).

confidential.  *Id.*  That same day, Plaintiff responded to Defendant's letter and disagreed with the contention that the redactions should remain while the merits of the summary judgment motion are decided.  Dkt. No. 21 at 1.  Plaintiff took the position that there was no reason that the documents should not be made immediately publicly accessible.  *Id.* at 6.

On November 5, 2021, Defendant wrote in further support of its request to maintain the documents under seal until after the Court resolves the challenge to the arbitral confidentiality provision.  Dkt. No. 22 at 1.  Once again, Defendant did not rely upon the privacy interests of any individuals or the interest of IBM or any other individual or entity in the protection of proprietary or commercially sensitive information.  Defendant requested that, if the Court decides that the documents must be immediately disclosed, Defendant be given an additional opportunity to explain why the materials at issue are not judicial documents subject to any presumption of public access and, even if they are, should not be publicly disclosed due to countervailing concerns.  *Id.*  If this situation came to pass, Defendant further asked that the Court issue a stay for thirty days plus the pendency of any appeal to preserve the status quo and allow for appellate review.  *Id.* at 2.

In line with the case management plan, Defendant IBM cross-moved to dismiss on November 18, 2021.  Dkt. No. 25.  Defendant filed a consolidated memorandum in opposition to Plaintiff's motion for summary judgment and in support of its motion to dismiss.  Dkt. No. 26. As a general matter, the memorandum does not take issue with the significance of the redacted information for Plaintiff's ADEA case but argues that the confidentiality agreement is enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*  The memorandum thus was filed publicly.

On December 9, 2021, Plaintiff filed her reply memorandum.  At the same time, she formally moved to file that memorandum and the accompanying declaration in support of her motion for summary judgment under seal in light of Defendant's position, i.e., that all information exchanged in the arbitrations was confidential under the arbitration agreements and should be treated as confidential in federal litigation.  The sealing motion did not reference any particularized bases for Defendant's request for confidentiality beyond the notion that if something was confidential in an arbitration it had to be confidential in a litigation.  Dkt. No. 31 at 1; *see also* Dkt. Nos. 32–33.  Plaintiff also requested that the Court direct the parties to confer to narrow the portions of the reply and accompanying documents that should remain redacted or under seal.  Dkt. No. 31 at 1.  On December 13, 2021, Defendant responded and requested that the Court leave the sealed and redacted documents in place and direct the parties to meet and confer on redactions for Plaintiff's reply memorandum and accompanying documents.  Dkt. No. 34 at 2.  Defendant still did not make any particularized requests for confidentiality.

The next day, on December 14, 2021, in the face of Defendant's blanket request for confidentiality and in the absence of any more narrowly tailored requests, the Court gave Defendant one more chance.  In addition to ordering the parties to meet and confer regarding redactions in Plaintiff's reply, the Court ordered the parties to submit a joint letter setting forth each party's position with respect to each redaction in any of the papers that had been filed on the docket.  Dkt. No. 35.  The Court ordered that, for each redaction, Defendant include the specific harm that would befall it should the redacted information be made public.  *Id.*  After the meet-and-confer, Plaintiff publicly filed redacted copies of her reply filings.  Dkt. Nos. 36–37.

As directed by the Court, on December 17, 2021, the parties submitted the joint letter with each party's position with respect to each redaction.  Dkt. No. 38.  Defendant submitted

almost identical rationales for each redaction.  For the most part, Defendant still did not make

any narrowly tailored requests for confidentiality.  It still took the position that if information

was exchanged in a confidential arbitration, it must *ipso facto* be kept confidential in the

litigation, regardless whether its disclosure would compromise any other legitimate interest of

Defendant or any third party.  For almost all redactions, Defendant makes the blanket contention:

> The redacted documents are not judicial documents subject to the presumption of
> public access because they cannot be considered on IBM's dispositive motion to
> dismiss, and even if the presumption applied, it carries little weight and is easily
> outweighed by the harms to IBM including (a) the destruction of its [Federal
> Arbitration Act]-protected right to arbitral confidentiality caused by counsel's ruse
> of filing irrelevant material misappropriated from other arbitrations for the
> improper purpose of evading their confidentiality obligations and (b) the
> undermining of decisions from other judges in this district who have ordered this
> same content to remain redacted/sealed at this time under identical circumstances.

Dkt. No. 38-1; *see also* Dkt. Nos. 38-2 to 38-7 (same).  Plaintiff responds that "IBM has not

identified a specific harm that would befall it should the information be made public as the

redacted information is not proprietary information, trade secrets, or other sensitive business

information that would disadvantage IBM's business interests."  Dkt. No. 38-1; *see also* Dkt.

Nos. 38-2 to 38-7 (same).

For certain redactions, Defendant also contends that removing the redaction would harm

IBM through "the violation of a presumption of privacy on behalf of current/former employees,

and reputational harm to IBM and individual third-party employees/former employees."  Dkt.

No. 38-1; *see also* Dkt. Nos. 38-2 to 38-7 (same).  For these redactions, Plaintiff replies, for

example, that "the redacted information does not contain any private information regarding any

current or former IBM employees" or that "the redacted information does not contain any private

information beyond the names of former IBM executives, which are already public and/or not

genuinely private."  Dkt. No. 38-1; *see also* 38-2 to 38-7.

The parties agreed that some redactions were required by Federal Rule of Civil Procedure 5.2, which permits redactions of sensitive information without seeking prior permission from the Court. *See* Dkt. No. 38-4. The parties also agreed that the monetary amount of certain arbitration awards was genuinely confidential and should remain redacted, *see* Dkt. Nos. 38-2, 38-4, 38-5, and that any home addresses should remain redacted, *see* Dkt. No. 38-4.

The same day the parties filed the joint letter, Defendant moved to stay any decision on unsealing until after Defendant's motion to dismiss was resolved. Dkt. No. 39 at 1. Alternatively, if the Court orders the unsealing or unredacting of any information, Defendants requested a stay of that order pending appeal. *Id.* Three days later, on December 20, 2021, Plaintiff responded to Defendant's letter and argued that IBM's request for a stay pending appeal should be denied. Dkt. No. 40. Then, on December 23, 2021, in accordance with the case management plan, Defendant filed its reply in support of its motion to dismiss. Dkt. No. 41.

## III. The Redactions at Issue

Defendant's requests for sealing are broad. They appear to cover everything that took place in an arbitration, no matter how general or generic and regardless whether it would qualify as private or proprietary. Representative examples of these requests, from Plaintiff's statement of material facts in support of her motion for summary judgment, include the following:

- A report that arbitrators in a number of other cases took the position that the timing provision of IBM's Separation Agreement does not allow a claimant to invoke the "piggybacking" doctrine in arbitration that would have applied in court. Dkt. No. 15 ¶ 15.

- A report of IBM's legal position in the arbitrations—that IBM has taken the position that any challenges to the enforceability of any portions of its arbitration agreement be heard by a court, rather than an arbitrator. *Id.* at 5 n.5.

- A report of IBM's position regarding the appropriate venue for challenging the arbitration clause—that "Plaintiff's counsel have challenged the confidentiality provision in a

number of arbitrations but IBM has argued that any challenges to provisions in the agreement must be addressed by a court, not the arbitrator." *Id.* ¶ 20.

- The general statement that as a result of IBM's position, "a number of employees pursuing ADEA claims against IBM in arbitration have had their claims dismissed on summary judgment or have not prevailed at hearing, having not been able to use all this common evidence obtained in other cases regarding IBM's top-down scheme to oust older employees from its workforce in order to increase the proportion of younger employees." *Id.* ¶ 21.

- The headings in Plaintiff's Rule 56.1 statement, *see, e.g.*, *id.* at 7, including such general ones as: "Strategic Corporate Planning Documents," *id.* at 10; "Testimony of High Level Executives," *id.* at 13; and "Demographic Data," *id.* at 18.

- The statement that the evidence obtained in arbitration "reflects age animus from IBM's highest ranks." *Id.* ¶ 25.

- Selected emails and other historical documents from high-ranking officials at IBM that apparently were used or produced in the arbitrations that on their face appear to show an effort to remove older employees in favor of younger employees. *See, e.g.*, *id.* ¶¶ 22, 27–31, 33, 34.

## DISCUSSION

**I.      Defendant's Motions to Seal**

**A.      General Principles**

The Supreme Court and Second Circuit have long held that there is a presumption of immediate public access to judicial documents under both the common law and the First Amendment.  *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006).

Both presumptions exist to protect values that are essential to the preservation of a free democratic society.  "The common law right of public access to judicial documents is firmly rooted in our nation's history," *id.* at 119, and "is said to predate the Constitution," *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*").  It "is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice. .

11

. . [P]rofessional and public monitoring [of the work of the courts] is an essential feature of democratic control." *Lugosch*, 435 F.3d at 119 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*")).  "In addition to the common law right of access, it is well established that the public and the press have a 'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'" *Id.* at 120 (quoting *Hartford Courant Co. v. Pellegrino,* 380 F.3d 83, 91 (2d Cir. 2004)).  The First Amendment right of access is derived in part from the fact that "[a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." *Id.* at 124 (alteration in original) (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)).

Both doctrines protect the right of the public to access judicial documents, which include papers filed in connection with summary judgment motions.  "Before any such common law right can attach, [the] court must first conclude that the documents at issue are indeed 'judicial documents.'" *Id.* at 119.  "A 'judicial document' . . . is a filed item that is 'relevant to the performance of the judicial function and useful in the judicial process.'" *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016) (quoting *Lugosch*, 435 F.3d at 119).  To determine what counts as a judicial document, a court considers "the 'relevance of the document's specific contents to the nature of the proceeding' and the degree to which 'access to the [document] would materially assist the public in understanding the issues before the . . . court, and in evaluating the fairness and integrity of the court's proceedings.'" *Bernstein*, 814 F.3d at 139 (alteration in original) (quoting *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 166–67 (2d Cir. 2013)).  This determination is not based upon whether the judge has relied on the document or on any specific information in it because the public is entitled to know not only what the judge relied on but also what was conveyed to the judge that she did not rely on—what,

from the public's perspective, "the judge *should* have considered or relied upon, but did not." *Lugosch*, 435 F.3d at 123.  Papers filed in support and in opposition to a motion for summary judgment have been repeatedly held to be judicial documents.  *See, e.g.*, *id.* at 121; *Brown v. Maxwell*, 929 F.3d 41, 47 (2d Cir. 2019).  The same considerations apply under the First Amendment, and "there exists a qualified First Amendment right of access to documents submitted to the court in connection with a summary judgment motion."  *Lugosch*, 435 F.3d at 124.

The common-law and First Amendment rights of access are not absolute.  Under the common law, "[o]nce the court has determined that the documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption."  *Id.* at 119.  "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts."  *Id.* (quoting *Amodeo II*, 71 F.3d at 1049).  The weight of the common-law presumption given to documents used by parties in connection with summary judgment is of the "highest."  *Id.* at 123.

Accordingly, the Court may deny the public its common-law right of access to summary judgment papers only if there are "countervailing factors" that weight against public disclosure.  *Id.* at 120 (citing *Amodeo II*, 71 F.3d at 1050).  "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'"  *Id.* (quoting *Amodeo II*, 71 F.3d at 1050).

Under the First Amendment, similar findings must be made to deprive the public of access to summary judgment documents.  "[C]ontinued sealing of [summary judgment] documents may be justified only with specific, on-the-record findings that sealing is necessary to

preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Id.*

Such specific, on-the-record findings must be made after "review[ing] the documents

individually" and cannot be based on "generalized statements about the record as a whole."

*Brown*, 929 F.3d at 48.

In short, "the presumption of access under both the common law and the First

Amendment [requires that] documents may be kept under seal [only] if 'countervailing factors'

in the common law framework or 'higher values' in the First Amendment framework so

demand." *Lugosch*, 435 F.3d at 124.

Both the common-law and First Amendment presumptions of access attach when

summary judgment papers are filed and presented to a court. *See id.* at 120–21.  The public need

not await the judge's decision before it can learn what is at stake in a litigation.  The Second

Circuit thus has held that it was "error for [a] district court to conclude that it could not" decide

whether documents should remain under seal until after it had ruled on the underlying summary

judgment motion.  *Id.* at 120–21; *see also Brown*, 929 F.3d at 47 ("[I]t is well-settled that

'documents *submitted* to a court for its consideration in a summary judgment motion are—as a

matter of law—judicial documents to which a strong presumption of access attaches, under both

the common law and the First Amendment.'" (emphasis added) (quoting *Lugosch*, 435 F.3d at

121)); *Susquehanna Int'l Grp. Ltd. v. Hibernia Express (Ireland) Ltd.*, 2021 WL 3540221, at *2

(S.D.N.Y. Aug. 11, 2021) ("Once [a document is] filed on the docket, the presumption of access

attaches . . . and does not disappear." (alteration in original) (quoting *Dawson v. Merck & Co.*,

2021 WL 242148, at *5 (E.D.N.Y. Jan. 24, 2021))).  The Second Circuit has "expressly rejected

the proposition that 'different types of documents might receive different weights of presumption

based on the extent to which they were relied upon in resolving [a] motion [for summary

judgment].'"  *Brown*, 929 F.3d at 48 (alterations in original) (quoting *Lugosch*, 435 F.3d at 123).

Instead, "the proper inquiry is whether the documents are relevant to the performance of the

judicial function, not whether they were relied upon."  *Id.* at 50.

Moreover, the Second Circuit has instructed that motions to seal (or unseal) should not

linger on the docket for long.  The First Amendment does not easily tolerate the continued

concealment of information to which the public has a right of access—whether self-imposed by

the judiciary or imposed by other branches of government.  "Each passing day [that a document

or information remains under seal] may constitute a separate and cognizable infringement of the

First Amendment."  *Lugosch*, 435 F.3d at 126 (quoting *Grove Fresh Distrib., Inc. v. Everfresh

Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994)).  Thus, the Circuit has held that it is error for a court

not to "act expeditiously" on a motion to seal; it has demanded district courts must make their

findings "quickly."  *Id.*  "The public cannot properly monitor the work of the courts with long

delays in adjudication based on secret documents."  *Id.* at 127.

Finally, although "oral arguments relating to a motion for summary judgment fall into the

category of civil proceedings to which there is a First Amendment presumption of access," *id.* at

124 (citing *Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 23 (2d Cir. 1984)), the

right of access is not limited to arguments presented in open physical court and does not depend

on whether the court holds a hearing, *id.*  "Access to written documents filed in connection with

pretrial motions is particularly important in the situation . . . where no hearing is held and the

court's ruling is based solely on the motion papers."  *Id.* (quoting *Matter of New York Times Co.*,

828 F.2d 110, 114 (2d Cir. 1987)).

B.      **Application of the Principles**

1.      **The Documents at Issue Are "Judicial Documents"**

Defendant cannot seriously dispute that the documents at issue and the information

contained in them are judicial documents to which the weight of the presumption of access is of

the highest.  The Second Circuit has squarely held that documents submitted in connection with a

summary judgment motion, as to which a party seeks entry of judgment in its favor, "are—as a

matter of law—judicial documents to which a strong presumption of access attaches, under both

the common law and the First Amendment."  *Id.* at 121.  Each of the documents filed under seal

and publicly with redactions was submitted in support of or in opposition to Plaintiff's motion

for summary judgment.  Accordingly, a presumptive right of access attaches.  *See Lugosch*, 435

F.3d at 120–21; *Brown*, 929 F.3d at 47.  And the weight of the presumption given to these

summary judgment documents is of the "highest."  *Lugosch*, 435 F.3d at 123.

Defendant argues that the summary judgment motion cannot be considered to be a

"judicial document" because it cannot be considered on Defendant's motion to dismiss.  That

argument, however, cannot be reconciled with either the positions Defendant previously has

taken in this litigation and upon which the Court relied or with *Lugosch* and *Brown*.

As a matter of fact, the primary reason that Plaintiff's motion for summary judgment is

presently before the Court is that Defendant asked to allow Plaintiff to file that motion prior to

any discovery in this case and prior to Defendant filing a motion to dismiss.  In particular, the

joint proposed case management plan and scheduling order submitted by Defendant and by

Plaintiff on October 15, 2021 asked the Court to allow Plaintiff to file her motion for summary

judgment on October 28, 2021 and Defendant to file its opposition to that motion and a cross-

motion to dismiss on November 18, 2021.  Dkt. No. 10.  Had Defendant not asked for that relief

and opposed the filing of a motion for summary judgment before it had had the opportunity to

move to dismiss, the Court might have granted that relief.  Although a party has a right to move for summary judgment, *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 573 (2d Cir. 2005) ("[S]ummary judgment may be sought at any time after a pleading is served." (citing *Schwartz v. Compagnie General Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968)), "summary judgment motions prior to discovery are disfavored," *GMA Accessories, Inc. v. Croscill, Inc.*, 2007 WL 766294, at *1 (S.D.N.Y. Mar. 13, 2007) (Lynch, J.).  *Cf. Hellstrom v. U.S. Dep't of Veterans Affs.*, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."); *Banyan v. Sikorski*, 2021 WL 1163653, at *6 (S.D.N.Y. Mar. 26, 2021) ("[T]he law disfavors granting summary judgment prior to the close of discovery.").  Having pressed the Court to permit the filing of a motion for summary judgment prior to discovery, Defendant cannot now be heard to argue (and does not even appear to argue) that the summary judgment motion is not properly before the Court.  *See Ashmore v. CGI Grp., Inc.*, 923 F.3d 260, 272 (2d Cir. 2019) ("Judicial estoppel functions to 'protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001))).

As a matter of law, the status of a filing as a "judicial document" turns upon the nature of the document and its relevance to the public's understanding of the judicial function and not necessarily upon the procedural posture of the case at the time the document is filed.  Plaintiff's motion and the accompanying papers ask the Court for the ultimate relief any court can grant—a judgment in her favor.  The entry of judgment is integral to the judicial function.  Plaintiff asks that the Court take that action and, in its opposition papers, Defendant asks that the Court deny the motion for summary judgment.  It is irrelevant that, after the motion was filed, Defendant

filed a motion to dismiss or that, if the motion to dismiss ends up being granted, the Court will also deny the motion for summary judgment.  The Court in *Lugosch* held that, "[a]s a matter of law, . . . documents—by virtue of having been *submitted* to the court as supporting material in connection with a motion for summary judgment—are unquestionably judicial documents under the common law."  435 F.3d at 123 (emphasis added).  It is irrelevant whether the Court, after reviewing all of the papers, might decide in Defendant's favor and might decide that it need not address the evidence submitted by Plaintiff.  The Court has not made that decision.  And if it does, another court—or the public—might disagree with that judgment.  It is incorrect "to suggest that different types of documents might receive different weights of presumption based on the extent to which they were relied upon."  *Id.*  "[D]ocuments that the judge *should* have considered or relied upon, but did not, are just as deserving of disclosure as those that actually entered into the judge's decision."  *Id.*  And "[o]nce those submissions come to the attention of the district judge, they can fairly be assumed to play a role in the court's deliberations."  *Id.*; *cf. Bernstein*, 814 F.3d at 140 ("The fact that a suit is ultimately settled without a judgment on the merits does not impair the 'judicial record' status of pleadings.  It is true that settlement of a case precludes the judicial determination of the pleadings' veracity and legal sufficiency. . . . In any event, the fact of filing a complaint, whatever its veracity, is a significant matter of record.  Even in the settlement context, the inspection of pleadings allows the public to discern the prevalence of certain types of cases, the nature of the parties to particular kinds of actions, information about the settlement rates in different areas of law, and the types of materials that are likely to be sealed.  Thus, pleadings are considered judicial records even when the case is pending before judgment or resolved by settlement." (alterations, internal quotation marks, and citations omitted)).

The rule could hardly be otherwise. The public has a presumptive right of access to materials submitted in connection with a summary judgment motion even if one or the other party (or both) might prefer to keep those materials confidential. That right of access attaches upon filing. From a practical perspective, if the filing of a motion to dismiss or a motion for judgment on the pleadings could itself operate to suspend the characterization of a document as a "judicial document" and the legal consequences that follow from that characterization, few would bypass the making of such a motion, however meritless. The effect would be to invite a slew of motions to dismiss and motions for judgment on the pleadings. Every litigant who did not want information disclosed, but who could not contend in good faith that the information was inadmissible or asserted for a frivolous or improper purpose, would file a motion to dismiss (meritorious or not) and then argue, as IBM does here, that the information filed under seal must remain under seal at least until the motion is decided. Such a result would run flatly contrary to *Lugosch* which, as discussed, requires courts to decide motions to seal "quickly," for each passing day may constitute a new First Amendment violation. 435 F.3d at 126–27.

Thus, to keep these materials sealed, Defendant must present countervailing factors—such as the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure—and interests of "higher" value sufficient for the Court to make specific, on-the-record findings why the requested sealing is necessary and narrowly tailored. *Id.* at 124.

Defendant presents two separate arguments. First, it makes a blanket argument that regardless of any interests in privacy, any proprietary interest, interest of commercial sensitivity, or interest in judicial or arbitral efficiency that might attach to any specific information, all information that was disclosed or discussed in the arbitration is, by virtue of that fact alone,

19

entitled to continued sealing.  In its words, the public interest in disclosure of judicial documents

is "outweighed by the harms to IBM including . . . the destruction of its [Federal Arbitration

Act]-protected right to arbitral confidentiality."  Dkt. No. 38-1; *see also* Dkt. Nos. 38-2 to 38-7

(same).  Second, it argues that disclosure of certain specific pieces of information would

compromise privacy interests.[2]  The Court considers each argument in turn.

### 2.    Confidentiality of Information Exchanged in an Arbitration Governed by a Confidentiality Clause

Defendant makes four arguments in support of its broad proposition that because

information in the summary judgment documents was exchanged in confidential arbitrations, it

should for that reason alone be protected from disclosure to the public in connection with the

Court's adjudication of Plaintiff's summary judgment motion: (1) Plaintiff's motion is a ruse and

a party should not be able to defeat a confidentiality agreement by the mere expedient of

---

[2] Defendant also argues that any presumption of public access is outweighed by the harm to IBM from "the undermining of decisions from other judges in this district who have ordered this same content to remain redacted/sealed at this time under identical circumstances."  Dkt. No. 38-1; *see also* Dkt. Nos. 38-2 to 38-7 (same).  The record does not reflect, however, that Judge Furman has reviewed the redactions at issue and decided they satisfied *Lugosch*.  Moreover, even if he had, what IBM claims as "harm" is nothing other than the consequence of a judicial system in which authority at the trial court level is distributed among a number of judges and in which only circuit court decisions, and not other district court decisions, are binding on a district court judge.  *See Arculeo v. On-Site Sales & Mktg., LLC*, 321 F. Supp. 2d 604, 609 (S.D.N.Y. 2004) ("[T]he decisions of district courts, even those located within the same district, are not binding on other district courts . . . ."); *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 154 (S.D.N.Y. 2011) ("An opinion of a District Judge does not bind the court in which the District Judge sits." (citing cases)).  It does not establish that IBM has suffered injury.  Indeed, that Judge Furman ruled first on a similar issue is simply an accident of timing.  This case was filed within a few days of the consolidated cases before Judge Furman.  *Compare Lohnn v. International Business Machines Corp.*, 21-cv-6379 (S.D.N.Y.) (Liman, J) (filed July 27, 2021), *with In Re: IBM Arb. Agreement Litig.*, 21-cv-6296 (S.D.N.Y.) (Furman, J.) (filed July 23, 2021).  And when this case was filed, both parties filed statements of relatedness to the case before Judge Furman.  *See* Dkt. Nos. 4–5.  Yet Judge Furman declined to designate the case as related, and the case was assigned to this Court.  Tellingly, Defendant does not argue that Plaintiff is bound by principles of collateral estoppel by decisions in the consolidated *In Re: IBM Arbitration Agreement Litigation*, much less that the independent interests of the public in disclosure could be compromised by the litigation positions of one party to a lawsuit.

challenging it in court and then filing a motion for summary judgment; (2) the strong federal policy in favor of arbitration reflected by the Federal Arbitration Act weighs heavily against any disclosure that would vitiate an arbitral confidentiality term; (3) "much of the protected material" (but it does not say which) is covered by protective orders issued by the arbitrators in the various arbitration proceedings; and (4) (related to the argument that the motion is not a judicial document) it is premature for the Court to decide whether the material is confidential because after the motion for summary judgment was filed, Defendant filed a motion to dismiss, and the motion to dismiss—if granted—would dispose of the motion for summary judgment.  Dkt. No. 20 at 1–2; *see also* Dkt. No. 39 at 1–2.

None of these arguments are persuasive.  Plaintiff's lawsuit and motion for summary judgment are not a "ruse" to make public information that would otherwise be subject to a confidentiality agreement.  Plaintiff has filed this lawsuit to be able to use certain evidence that has been used in other arbitrations in support of her arbitration.  Defendant identifies no benefit to Plaintiff from merely making the information public.[3]  It is not public disclosure but ability to use the evidence in an arbitration that she seeks.  Plaintiff has filed this lawsuit and this motion, and attached the materials she attaches to the motion, to win, not for the pretextual reason to disclose.  Plaintiff complains about a contractual provision that on its face appears to prevent her from using information that was exchanged in one arbitration from being used in another (even if the information otherwise was not entitled to any confidential treatment or was publicly known) and asks for a ruling that that provision is not enforceable in the arbitration Plaintiff intends to

---

[3] Indeed, in her summary judgment papers, Plaintiff does not seek to invalidate the confidentiality clause to disclose the information publicly.  *See* Dkt. No. 17 at 6 n.8, 30 n.33. Plaintiff only argues that the confidentiality clause should not be used to prevent employees from using, in their own arbitrations, evidence obtained in other similar cases.  *See id.*

launch.  The disclosure to the public is not Plaintiff's objective; the invalidation of a rule that

limits the evidence that can be used in a confidential arbitration is her objective.

Plaintiff's motion for summary judgment is not frivolous and her citation to the type of

evidence she would like to present in the arbitration is not pretextual.  *See Brown*, 929 F.3d at 47

n.12 (indicating that holding in *Lugosch* "relie[d] on the general principle that parties may 'be

assumed to have supported their papers with admissible evidence and non-frivolous arguments'"

(quoting *Lugosch*, 435 F.3d at 122)).  Indeed, Defendant not once argues that Plaintiff's motion

is frivolous.  The Supreme Court and the Second Circuit have held that an arbitration agreement

may be unenforceable in the rare cases where it is drafted in a manner that would deprive a party

of the ability to present in any forum a right granted to her by Congress.  No arbitration clause

can be so restrictive as to deprive all claimants of the ability to present and effectively vindicate

in the arbitral forum a right granted by a congressional statute.  *See Mitsubishi Motors Corp. v.

Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985) (discussing how an arbitration clause

will be enforced only "so long as the prospective litigant effectively may vindicate its statutory

cause of action in the arbitral forum"); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28

(1991) (same); *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000) ("[E]ven

claims arising under a statute designed to further important social policies may be arbitrated

because so long as the prospective litigant effectively may vindicate his or her statutory cause of

action in the arbitral forum, the statute serves its functions." (internal quotation marks and

alteration omitted)); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273–74 (2009) (discussing

effective-vindication rule).

The Supreme Court and Second Circuit also have held, however, that a party cannot

challenge the limitations of an arbitration clause in the abstract and must instead present

evidence that the effect of the clause is to prevent a claimant from effectively vindicating a statutory right.  A party challenging such a clause must not rest on allegations or conclusions alone but must make a "showing."  *See, e.g.*, *Gilmer*, 500 U.S. at 31 ("[T]here has been no showing in this case that the NYSE discovery provisions, which allow for document production, information requests, depositions, and subpoenas, will prove insufficient to allow ADEA claimants such as Gilmer a fair opportunity to present their claims." (citation omitted)); *Am. Family Life Assurance Co. of New York v. Baker*, 778 F. App'x 24, 28 (2d Cir. 2019) (summary order) (remanding for the district court to develop a record whether the effect of an arbitration clause acts as a prospective waiver of a statutory claim).

For example, in *Guyden v. Aetna, Inc.*, 544 F.3d 376, 386–87 (2d Cir. 2008), the Second Circuit rejected the plaintiff's argument that her ability to effectively vindicate rights granted to her by Congress was violated by a provision in an arbitration agreement that could be read to limit her ability to present evidence in an arbitral forum.  The court recognized that a provision that deprived a claimant of "a meaningful opportunity to present her claim" "might well be unenforceable."  *Id.* at 386.  But it held that the plaintiff had not established the invalidity of the arbitration provision at issue because she "ha[d] introduced no evidence that her fears [we]re well-founded."  *Id.* at 387.  Citing the Supreme Court's decision in *Green Tree*, the Circuit concluded, "we must enforce the Agreement unless and until the record proves otherwise."  *Id.* (citing *Green Tree*, 531 U.S. at 90–91, and explaining that it "enforce[d] [an] arbitration agreement despite the risk of unbearable arbitration costs because the record 'contain[ed] hardly any information on the matter' and the risk was therefore 'too speculative to justify the invalidation of an arbitration agreement'" (third alteration in original)).  If *Guyden* means anything, it must mean that a plaintiff should have the ability to present a case that an arbitration

clause—in practice—has the effect of frustrating a right granted by Congress.  Although the

provision as to which the Circuit held that record evidence was required in *Guyden* involved

limitations on arbitral discovery and the provision at issue here involves arbitral confidentiality,

the challenge is the same—Plaintiff argues that the confidentiality clause (combined with the

discovery provisions) deprives her of a meaningful opportunity to present her statutory claim.[4]

And the underlying principle is the same.  In order to hope to prevail on such a claim, a plaintiff

must present record evidence that her fears are well-founded and not just speculative.  It follows

that, unless *Green Tree* and *Guyden* are to be empty letters, a plaintiff must be allowed to present

a record that the effect of a challenged arbitration provision (or set of arbitration provisions) is to

deprive her of a meaningful opportunity to present her claim.[5]

Plaintiff here thus has done no more in her summary judgment papers than what the

Supreme Court and Second Circuit have held that a plaintiff challenging an arbitration clause as

a prospective waiver of a statutory right must do.  Plaintiff has attempted to show that her fears

---

[4] Confidentiality clauses provide an informational advantage to the employer defendant "since
the employee generally requires more discovery than the employer, which generally has ready
access to most information relevant to the claim and can often present a defense based only on
the deposition of the complaining employee."  *Guyden v. Aetna, Inc.*, 2006 WL 2772695, at *7
(D. Conn. Sept. 25, 2006), *aff'd*, 544 F.3d 376 (2d Cir. 2008).  "The informational advantage to
the employer may be diminished by plaintiffs' lawyers and arbitration appointing agencies like
the AAA, who can scrutinize arbitration awards and accumulate a body of knowledge on a
particular company."  *Id.* at *6 (internal quotation marks omitted).

[5] *Guyden* also involved a challenge to a confidentiality provision, but that challenge was based
on the provision's prohibition of public disclosure of arbitral information.  *See id.* at 384.  The
plaintiff in *Guyden* did not argue—as Plaintiff does here—that the provision limited the ability to
effectively vindicate her rights in the arbitral forum.  It was in that context that the Circuit held
that a record was required to make a claim with respect to the discovery provision but did not say
the same for the confidentiality provision.  Of course, here, Plaintiff argues that the
confidentiality provision will prevent her from presenting the evidence necessary to vindicate her
congressionally granted rights.  Under *Guyden* and *Green Tree*, Plaintiff must not simply make
that assertion but must offer evidence to prove it.

are not just speculative but are well-founded and that, if enforced, the clause she challenges will prevent her from effectively vindicating a statutory right.

The information in the motion for summary judgment thus is limited to that which is necessary (whether or not sufficient) to prove Plaintiff's case and to establish that the effect of the clause is to operate as a prospective waiver of a statutory right. She has attempted to do what *Guyden* and *Green Tree* require. First, she has presented examples of the types of evidence that would be available to her but for the effect of the confidentiality clause and that, if available, would enable her to vindicate her husband's rights under the ADEA. That evidence is directly relevant to her claim. It consists of:

- Communications between high-level IBM executives in which they discussed how the percentage of millennials employed at IBM trailed that of competitor firms, used a disparaging term to describe older IBM employees, and described layoffs that would help change the age distribution of employees at IBM;

- Corporate planning documents that set forth hiring and workforce composition goals including a focus on hiring early professionals to correct the seniority mix and that discussed a strategic relocation program that was allegedly used to ensure the resignation of older employees from the company;

- Documents and data produced by IBM to the EEOC regarding layoffs and related matters that resulted in an unfavorable finding by the EEOC;

- Testimony from high-level executives in various arbitrations related to "reskilling" IBM's workforce, IBM's focus on attracting early professional hires, the availability of age demographic information regarding the company's layoffs, and the practice of requiring additional approval for laid-off employees to obtain other open positions at IBM; and

- Demographic data on layoffs in a particular business unit within IBM that Plaintiff's counsel's expert analyzed to determine that older employees were more than twice as likely to be selected for termination than younger employees.

Dkt. No. 15.

Plaintiff also has presented evidence that IBM, and arbitrators, have taken positions that prevent such evidence from being used and, she argues, from preventing claimants from effectively vindicating ADEA rights. Such evidence includes that:

- Former IBM employees pursuing age discrimination claims in arbitration have been prevented from citing to favorable arbitral decisions and intermediate orders (such as discovery orders, orders denying summary judgment, and evidentiary rulings) won by other employees pursuing age discrimination claims;

- Former IBM employees who have not been able to rely on the previously discussed evidence have lost their cases in arbitration; and

- IBM has sought to deter Plaintiff's counsel from challenging the confidentiality provision in court and has sought sanctions against Plaintiff's counsel in several arbitrations for using information from other arbitrations to challenge the confidentiality provision.

*Id.*

This information is necessary for the Court to understand and decide the merits of the motion for summary judgment. Equally important, it is critical for the public to understand what is at stake in this litigation. At this stage of the proceeding, the Court expresses no view as to whether that evidence is sufficient to make out Plaintiff's claim. But there is nothing wrongful or "ruse"-like about Plaintiff attempting to make out her claim. That is what courts are for.

Second, neither the fact that the arbitrations are governed by a confidentiality provision nor the strong federal interest in favor of arbitration is sufficient in itself or together to support IBM's broad proposition that everything disclosed in the arbitration must be kept under seal, regardless of whether that information was confidential in the first place or its disclosure would otherwise cause harm. It is black-letter law—not disputed by Defendant—that the fact that information exchanged between private parties is subject to a confidentiality agreement that binds them is not itself sufficient to deprive the public of the right of access to that information when it is properly filed in support of a motion asking the Court to take dispositive judicial action on a matter properly before that Court. *See Lugosch*, 435 F.3d at 126 ("[T]he mere

existence of a confidentiality order says nothing about whether complete reliance on the order to avoid disclosure was reasonable."); *In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 4750774, at *4 (S.D.N.Y. Aug. 11, 2015) ("The mere fact that information is subject to a confidentiality agreement between litigants, however, is not a valid basis to overcome the presumption in favor of public access to judicial documents.").  While a confidentiality agreement "may be binding on the parties, . . . it is not binding upon the Court."  *Century Indem. Co. v. AXA Belgium*, 2012 WL 4354816, at *14 (S.D.N.Y. Sept. 24, 2012); *see also Dentons US LLP v. Zhang*, 2021 WL 2187289, at *1 (S.D.N.Y. May 28, 2021) ("[W]hile enforcement of contracts in undeniably an important role for a court, it does not constitute a 'higher value' that would outweigh the presumption of public access to judicial documents." (quoting *Aioi Nissay Dowa Ins. Co. Ltd. v. ProSight Specialty Mmgt. Co., Inc.*, 2012 WL 3583176, at *6 (S.D.N.Y. Aug. 21, 2012))).

The Second Circuit has recognized that confidentiality provisions in arbitration agreements are enforceable and have rejected challenges to those provisions on their face.  *See, e.g.*, *American Family Life Assurance Co.*, 778 F. App'x at 27; *Guyden*, 544 F.3d at 385.  But the interest in arbitral confidentiality has never been understood to alone be sufficient to overcome the public's right to access judicial documents when otherwise confidential arbitral documents are submitted to a federal court in connection with a request for the Court to enter judgment or issue a dispositive order.  *See, e.g.*, *Susquehanna Int'l Grp. Ltd.*, 2021 WL 3540221, at *4 n.1 (Gardephe, J.) (rejecting argument that "presumption of public access is outweighed by the federal policy in favor of arbitration and interests of judicial efficiency" where "a strong presumption of public access applies to the [documents] and the parties have not adequately demonstrated . . . competitive harm absent sealing and have not narrowly tailored their sealing

request"); *Dentons US LLP*, 2021 WL 2187289, at *1 (Gardephe, J.) ("Here, Petitioner contends that sealing is appropriate because the parties agreed to file under seal any papers associated with an arbitration proceeding.  Confidentiality agreements alone are not an adequate basis for sealing, however." (citing cases)); *Century Indem. Co.*, 2012 WL 4354816, at *14 (Furman, J.) ("At bottom, the confidentiality agreement at issue in this case may be binding on the parties, but it is not binding upon the Court.  And while parties to an arbitration are generally permitted to keep their private undertakings from the prying eyes of others, the circumstance changes when a party seeks to enforce in federal court the fruits of their private agreement to arbitrate, *i.e.* the arbitration award." (internal quotation marks omitted)); *Church Ins. Co. v. Ace Prop. & Cas. Ins. Co.*, 2010 WL 3958791, at *3 (S.D.N.Y. Sept. 23, 2010) (Sullivan, J.) (noting that "[t]he mere existence of a confidentiality agreement . . . does not demonstrate that sealing is necessary" in denying request to seal petition to confirm arbitral award (internal quotation marks omitted)); *Aioi Nissay Dowa Ins. Co.*, 2012 WL 3583176, at *6 (Oetken, J.) ("Courts in this District have held that the mere existence of a confidentiality agreement covering judicial documents is insufficient to overcome the First Amendment presumption of access, and have consistently refused to seal the record of a petition to confirm an arbitration award, notwithstanding the existence of such an agreement." (internal quotation marks and citation omitted)); *Alexandria Real Est. Equities, Inc. v. Fair*, 2011 WL 6015646, at *3 (S.D.N.Y. Nov. 30, 2011) (Swain, J.) ("[T]he mere existence of a confidentiality agreement covering judicial documents is insufficient to overcome the First Amendment presumption of access."); *United States Sec. & Exch. Comm'n v. Ahmed*, 2020 WL 4333570, at *3 n.3 (D. Conn. July 28, 2020) (Arterton, J.) ("Beyond the documents' designation as confidential in the arbitration proceedings, [the party seeking sealing] has not made any arguments in support of its request for sealing which might overcome the

presumption of public access to documents filed in a federal proceeding.  But the mere existence

of a confidentiality agreement, however, does not demonstrate that sealing is necessary, and

district courts have consistently refused to seal the record of arbitration proceedings,

notwithstanding the existence of any agreement regarding confidentiality." (internal quotation

marks and citations omitted)); *cf. Glob. Reinsurance Corp.-U.S. Branch v. Argonaut Ins. Co.*,

2008 WL 126976, at *1 (S.D.N.Y. Jan. 7, 2008) (Castel, J.) ("Arbitration remains a species of

contract and, in the absence of some governing principle of law (*e.g.* in the regulatory

requirements), parties are permitted to keep their private undertakings from the prying eyes of

others.  The circumstance changes when a party seeks to enforce in federal court the fruits of

their private agreement to arbitrate, *i.e.* the arbitration award."), *on reconsideration,* 2008 WL

1805459 (S.D.N.Y. Apr. 21, 2008), *as amended* (Apr. 24, 2008).  In all of those cases, the courts

rejected the proposition that, simply because information was exchanged in an arbitration subject

to a confidentiality clause, that clause is sufficient to defeat the public's right to know when the

same information is submitted in support of a request for dispositive judicial action.  These

courts eschewed such a broad approach for a more narrowly tailored review of the specific

information at issue.

     Although many of these cases involved the disclosure of confidential arbitration

information after the arbitration was completed, and this case involves the disclosure of

information regarding completed arbitrations before Plaintiff has commenced an arbitration, that

distinction makes no difference.  Defendant has offered no argument why, if the strong federal

interest in arbitration does not defeat the disclosure of confidential information *ex post* after the

arbitration is completed, that strong federal interest should be permitted to defeat the public's

right of access to that information *ex ante* before Plaintiff's arbitration.  And no argument has

been offered in this situation where Plaintiff must present that information to the Court now (because doing so after the arbitration would not accord Plaintiff the right she seeks and would limit Plaintiff to the remedies under the FAA against confirmation of an award) and when such information is necessary to secure the "highest" value of the public's interest in the decisions of the courts.

The public disclosure of the information in many of Defendant's proposed redactions would not cause harm to any of its legitimate interests. For example, Defendant asserts no protectible interest in the confidentiality of the positions it has taken in the arbitrations regarding the confidentiality clause, the positions regarding that clause that have been taken for counsel for the claimants, or the rulings of the arbitrators regarding the clause. That information is not entitled to confidential treatment in this Court. Nor does Defendant assert a protectible interest in the type and quality of the evidence that counsel for claimants has accumulated and that it will hope to shield from the eyes of the arbitrators. The only interest it asserts with respect to such material is a general and undifferentiated one—that because the information was either exchanged in a confidential arbitration or produced in a confidential arbitration there would be some harm to the confidentiality agreement from disclosure. But the confidentiality agreement itself recognizes that the interest in confidentiality is not absolute; disclosure is permitted when necessary to confirm or challenge an award. Dkt. No. 30-1. There is no reason why, if that is so, both as a matter of law and as a matter of contract, the public's right to access should be denied when the information is necessary to a challenge Plaintiff makes to the lawfulness of the

arbitration provision not after the arbitrator has rendered an award against her but when such a challenge could provide any relief—before the arbitrator has issued a decision.[6]

Defendant's third argument is that "much of the protected material" is covered by a protective order issued by an arbitrator. Dkt. No. 20 at 2. That point undermines Defendant's argument. By negative implication, certain of the information that Defendant seeks to keep confidential here is not covered by a protective order. The only persons who will be deprived of that latter information are members of the public. The Court would be prepared to give weight to the findings of an arbitrator of confidentiality, particularly if those findings are based on something other than the blanket assertion that everything disclosed in the arbitration is confidential. In *Lugosch*, the Second Circuit addressed a similar argument—that the defendants were entitled to rely on the fact that a document was produced pursuant to a confidentiality order in asking that the document remain under seal—and, while rejecting the broad proposition that everything produced pursuant to the agreement should remain under seal, instructed the district court to give defendants "the opportunity to call the district court's attention to any particular circumstances surrounding the production of a contested document." 435 F.3d at 126. But Defendant here has not identified the documents and information that it argues should remain under seal that is the subject of a protective order from an arbitrator, much less that such order of the arbitrator was based on any particularized finding that disclosure of the information could cause harm. *See Ahmed*, 2020 WL 4333570, at *3 n.3 (rejecting sealing motion "[i]n the absence

---

[6] Tellingly, Defendant does not argue that confidentiality of all of the information as to which it seeks sealing is necessary to protect the integrity of the arbitral process in Plaintiff's case or those of other claimants who have yet to arbitrate their cases. Even if the information is not publicly disclosed under the right of public access, Plaintiff and her counsel already know the information and can seek to present it to the arbitrator. The only persons who would lose are members of the public who would be deprived of the knowledge of what is at issue in this litigation.

of any specific argument regarding the need for sealing beyond the confidentiality of these documents in related arbitration proceedings" where the "pleadings in those proceedings have been designated as Confidential and that the parties and the participating arbitrators have deemed the information they contain to be highly sensitive and confidential in nature" (internal quotation marks omitted)). Thus, the argument that some information is the subject of a protective order cannot support the continued maintenance under seal of all information conveyed in any arbitration. That is all the more the case when, as here, Defendant argues that all information conveyed in an arbitration was *ipso facto* confidential regardless of its nature and the impact that disclosure could create.

Fourth, Defendant argues that the Court should defer ruling on the motions to seal until after it has decided the motion to dismiss because, assuming the Court were to grant the motion to dismiss in Defendant's favor, Defendant argues that Plaintiff's motion for summary judgment would be moot and the documents filed in connection with that motion would not be judicial records to which a presumption of public access attaches. *See* Dkt. No. 20 at 2; Dkt. No. 39 at 1. In other words, according to Defendant's argument, since the Court would not need to review the information supporting the motion for summary judgment, those documents would not be judicial documents. This is just another way for Defendant to make its argument that the summary judgment motion is not a judicial document. And it is no more successful.

As noted, there is an irony to this argument as it is as a result of Defendant's agreement that the Court permitted Plaintiff to make a motion for summary judgment prior to Defendant's motion to dismiss. Dkt. No. 10-1. The Court cannot unring that bell now. The summary judgment motion is before the Court, and a presumptive right of access attaches.

In essence, the thrust of IBM's argument appears to be that Plaintiff is including material in her summary judgment papers, not to support her argument for summary judgment, but to improperly circumvent the confidentiality agreement and to place the material into the public domain.  The Court earlier addressed this argument.  It is without foundation.  IBM has articulated no ostensible benefit to Plaintiff from Plaintiff's effort to release the materials into the public domain.  Plaintiff's only reason for including those materials was to obtain summary judgment in her favor.

In reality, Defendant seems to be invoking (albeit not successfully) the concerns articulated by the Second Circuit in *Brown v. Maxwell*: the interests of the district courts "in safeguarding the integrity of their dockets" and in ensuring that court filings are not used improperly to disseminate information that could cause "potential damage to privacy and reputation."  929 F.3d at 44.  While the interest here is IBM's purported interest in arbitral confidentiality, the issue in *Brown* concerned evidence of sexual misconduct and abuse engaged in by prominent individuals, including American politicians, powerful business executives, foreign presidents, a well-known Prime Minister, other world leaders, and a long-time faculty member of Harvard Law School.  *See id.* at 45.  Some of these allegations had been stricken from the record after being included in a filing in a federal district court in Florida.  *See id.*  But these allegations found their way into the press where one of the accused individuals denied the allegations as lies, leading the accuser to file a defamation lawsuit in the District Court for the Southern District of New York.  *See id.* at 45–46.  The defamation lawsuit was hard-fought but confidential.  *See id.* at 46.  The parties agreed between themselves to keep 167 filed documents—nearly one-fifth of the docket—under seal and then settled the case without the sealed documents being made publicly available.  *See id.*

The Second Circuit's approach in *Brown* is instructive.  The court first noted that the district court committed error in essentially ceding authority to the litigants themselves to decide what information should be made public and what should not.  *See id.*  That same error would be committed here were the Court simply to defer to the parties' prior agreement that anything disclosed in the arbitration would be confidential in court—even if the arbitral confidentiality agreement could be so read.  The court then held that there was a presumption of access to the papers filed by the parties in support of and in opposition to summary judgment and that the district court was required "to review the documents individually and produce 'specific, on-the-record-findings that sealing [wa]s necessary to preserve higher values,'" and not just rely upon "generalized statements about the record as a whole," in permitting material to be filed under seal.  *Id.* at 48 (quoting *Lugosch*, 435 F.3d at 124).  The same principles apply here.  The summary judgment papers are judicial documents, and Defendant must support its claim to continued sealing by evidence that would permit the Court to make the individual findings.

Of significance here, however, the court then went on to discuss the risk that, with the presumptive right of access, a court might be used not to resolve legal issues but "as reservoirs of libelous statements for press consumption," or "to gratify private spite or promote public scandal."  *Id.* at 51 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).  That is the concern that Defendant seems to invoke here—that Plaintiff's filing is not made for any litigation purpose but rather to embarrass Defendant.  The Second Circuit described the "methods courts can employ to protect the judicial process from being coopted for such purposes," *id.*  First, the Second Circuit noted that the *Lugosch* presumption relies on the assumption that the documents filed with the court contain admissible evidence and non-frivolous arguments.  *Id.* at 47 n.12.  If the filing is frivolous and the evidence inadmissible, other

remedies might be available.  Those remedies are not available here.  Whether or not it is winning, Plaintiff's motion is not frivolous.  She seeks to vindicate a right granted by Congress and to do so in a manner—by filing a lawsuit and creating a record—sanctioned by the courts. The evidence is highly relevant.

Second, the Second Circuit held that the district courts could use several other tools to ensure that court filings are not being used improperly.  *Id.* at 51–52.  The Second Circuit stated that courts may "issue protective orders forbidding dissemination of certain material to protect a party or person from annoyance, embarrassment, oppression, or undue burden"; they "may also seek to counteract the effect of defamatory statements by explaining on the record that the statements appear to lack credibility"; they may strike material from filings under Federal Rule of Civil Procedure 12(f) on the grounds that it is "redundant, immaterial, impertinent, or scandalous"; and finally, courts in appropriate circumstances may impose sanctions under Federal Rule of Civil Procedure 11.  *Id.* at 52.

Notably, IBM has not even attempted to avail itself of any of these potential remedies, perhaps because they would not provide the broad relief it seeks.  It has not moved for a protective order.  Such an order would require a particularized showing with respect to particular information—an exercise IBM has conspicuously forsworn.   IBM would have to identify the information about which it was particularly concerned, not just all information exchanged in the arbitration or subject to the confidentiality clause. *See Ampong v. Costco Wholesale Corp.*, 2021 WL 3159757, at *2 (S.D.N.Y. July 27, 2021) ("The burden of showing good cause for the issuance of a protective order falls on the party seeking the order.  To establish good cause under Rule 26(c), courts require a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." (internal quotation marks and citations omitted));

*Burgess v. Town of Wallingford*, 2012 WL 4344194, at *6 (D. Conn. Sept. 21, 2012) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." (quoting *Application of Akron Beacon J.*, 1995 WL 234710, at *10 (S.D.N.Y. Apr. 20, 1995))).  The standards for a protective order are inconsistent with the sweeping relief Defendant seeks.

Defendant also has not moved to strike under Federal Rule of Civil Procedure 12(f). Without prejudging, such a motion too would appear to be meritless.  The information in the summary judgment papers is relevant to the issues before the Court and does not "unnecessarily reflect[] on the moral character of an individual or state[] anything in repulsive language that detracts from the dignity of the court," *United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 285 F. Supp. 3d 759, 773 (S.D.N.Y. 2018); it is thus not "redundant, immaterial, impertinent or scandalous," Fed. R. Civ. P. 12(f).  *See also Brown*, 929 F.3d at 52 n.42 ("Although motions to strike material *solely* on the ground that the matter is impertinent and immaterial are disfavored, when material is also scandalous, no such presumption applies." (internal quotation marks omitted)); *id.* ("Allegations may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice." (quoting *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992))).  Finally, while Defendant has argued that Plaintiff's motion is without merit and has opposed it, it has not sought Rule 11 sanctions; nor would the Court find such sanctions to be appropriate.

The Second Circuit in *Brown* did not hold that a court was permitted to prevent public access to documents to which a strong presumption of access attached on the mere fact that the party seeking to avoid disclosure had filed a motion to dismiss on the pleadings.  That is for good reason.  Parties have a right to file papers and motions in support of legal arguments that turn out

not to be meritorious as long as they are not being presented for any improper purpose and are warranted by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law, and satisfy the other requisites of Federal Rule of Civil Procedure 11. Indeed, it is precisely so that the public can know and judge for itself whether the judge's decision that a legal claim was not meritorious and can judge for itself whether existing law should be extended, modified, reversed, or replaced by new law that the common-law right of access and First Amendment right of access exist. The right of access would be a fragile one indeed if it were limited to information that a court believed supported its decision and did not extend to information or legal arguments that the court believed (but the public could dispute) were not meritorious.

For all the reasons given, the Court rejects Defendant's request to continue to broadly seal the designated information in the documents at issue.

### 3.   Limited Redactions Related to Privacy Interests

For some redactions, IBM does provide reasons beyond just a blanket claim for confidentiality and makes a presentation of countervailing factors and assertions that could support "specific, on-the-record findings that higher values necessitate a narrowly tailored sealing." *Lugosch*, 435 F.3d at 126.

First, for some redactions, Defendant argues that removing the redaction would harm IBM by "the violation of a presumption of privacy on behalf of current/former employees, and reputational harm to IBM and individual third-party employees/former employees." Dkt. No. 38-1; *see also* Dkt. Nos. 38-2 to 38-7 (same). Plaintiff responds that the redacted information does not contain private information. Dkt. No. 38-1; *see also* 38-2 to 38-7.

"Foremost among the competing concerns that a court weighing disclosure must consider is 'the privacy interest of the person resisting disclosure.'" *Mirlis v. Greer*, 952 F.3d 51, 61 (2d

Cir. 2020) (quoting *Amodeo II*, 71 F.3d at 1050).  "The privacy interests of innocent third parties

. . . should weigh heavily in a court's balancing equation."  *Amodeo II*, 71 F.3d at 1050 (quoting

*Gardner v. Newsday, Inc. (In re Newsday, Inc.)*, 895 F.2d 74, 79-80 (2d Cir. 1990)).  "In

determining the proper weight to accord an asserted privacy interest, a court should consider

both 'the degree to which the subject matter is traditionally considered private rather than

public,' as well as '[t]he nature and degree of the injury' to which the party resisting disclosure

would be subjected were the privacy interest not protected."  *Mirlis*, 952 F.3d at 61 (quoting

*Amodeo II*, 71 F.3d at 1051).  "The latter inquiry entails 'consideration not only of the sensitivity

of the information and the subject but also of how the person seeking access intends to use the

information.'"  *Id.* (quoting *Amodeo II*, 71 F.3d at 1051).

 Having reviewed the redactions for which Defendant claims a privacy interest, the Court

reaches a mixed conclusion.  There is no basis for redaction of entries that generally reference

"high level executives" or "corporate planning" documents.  Such general references do not

violate any privacy interest nor do they in any way threaten the integrity of an arbitral

proceeding.  For example, Defendant has not identified how, with respect to a corporation as

large as IBM, a reference to a "high level executive" could be used to pinpoint the specific

executive in question—even if that were sufficient to justify sealing.  Such characterizations are

critical to the public understanding of the motion.

 At the same time, however, the Court does believe that (a) the names and titles of

executives, managers, and other IBM employees; and (b) the names and titles of individuals

listed as authors and recipients of documents and the month and day (but not year) of those

documents should be redacted.  As noted, Defendant has not argued that disclosure of

information in a litigation would require its disclosure in an arbitration or compromise the

arbitration.  That is perhaps for good reason.  Much of the information is not of the nature that it

could be used in an arbitration and for that information that could in theory be used there is a

ready solution.  Nothing in this Memorandum and Order limits the discretion of the arbitrator

regarding what evidence to hear or not hear in an arbitral proceeding.  Just because information

is in a court filing does not mean that it will be admissible in the arbitration.  Moreover, limited

redaction should protect whatever interest Defendant has in the integrity of future arbitral

proceedings and in ensuring that the ultimate relief Plaintiff seeks through this motion is not

secured by the interim decision to make certain information that Plaintiff uses to get that relief

available to the public.  Defendant will be permitted to redact names, titles, precise dates,

including names of deponents and names on documents—information that would be necessary to

authenticate a document or to determine its author but that is not necessary for the public to

understand the issues in the litigation.  As to the limited documents and transcripts that constitute

"evidence," absent such information, the disclosure in this case of an unauthenticated document

with no identifying information regarding names of authors or recipients could not conceivably

compromise any interest of Defendant in ensuring that information from one arbitration not be

used in another.

Second, the Court agrees with the parties that the monetary amount of certain arbitral

awards should remain redacted, *see* Dkt. Nos. 38-2, 38-4, 38-5, and that any home addresses

should be redacted, *see* Dkt. No. 38-4.  These redactions are narrowly tailored to protect

countervailing factors of privacy interests of both the plaintiff and IBM in those arbitrations and

of the individuals whose home addresses were included in the documents.

Finally, though prior permission from the Court is not required, the redactions required by Federal Rule of Civil Procedure 5.2 for sensitive information should be made. *See* Dkt. No. 38-4.

## II.    Request for a Stay

Defendant requests a stay pending appeal of the Court's decision to unseal much of the information at issue. *See* Dkt. No. 39. The Court denies the request.

"In deciding whether to issue a stay pending appeal, a court must consider four factors: (1) whether the movant has 'made a strong showing' that it 'is likely to succeed on the merits'; (2) whether the movant 'will be irreparably injured absent a stay'; (3) whether a stay 'will substantially injure the other parties interested in the proceeding'; and (4) 'where the public interest lies.'" *New York v. Trump*, 490 F. Supp. 3d 736, 741 (S.D.N.Y. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). "Notably, '[a] stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case.'" *Id.* (alteration in original) (quoting *Nken*, 556 U.S. at 433). "Ultimately, the party or parties seeking the stay bear 'the heavy burden of demonstrating that a stay is warranted.'" *Id.* (quoting *U.S. Commodity Futures Trading Comm'n v. eFloorTrade, LLC*, 2020 WL 2216660, at *2 (S.D.N.Y. May 7, 2020)).

Defendant has not met its heavy burden in demonstrating that a stay is warranted. First, Defendant has not made "a strong showing" that it is likely to succeed on the merits. *Id.* Defendant relies on the ruling of another judge in this District who, in a similar case, has deferred ruling on the sealing motions until addressing the merits of the case. *See* Dkt. No. 39 at 3 (citing *In re IBM Arb. Agreement Litig.*, 21-cv-6296 (S.D.N.Y.)). But that Judge simply deferred ruling; he did not accept Defendant's broad arguments. Nor does the record reflect he

reviewed the actual redactions.  And the Court does not view this as a close case; Defendant has made few specific requests for confidentiality and has relied upon a blanket assertion of arbitral confidentiality that has consistently been rejected by the judges in this District.  Moreover, "demonstrating likelihood of success on the merits requires more than a mere possibility of relief." *Strougo v. Barclays PLC*, 194 F. Supp. 3d 230, 233 (S.D.N.Y. 2016) (internal quotation marks omitted).  Second, Defendant claims that it will suffer irreparable harm without a stay because a favorable decision by the Second Circuit could not undo the unsealing of any confidential information.  *See* Dkt. No. 39 at 3.  Yet Defendant has not identified how, if at all, the disclosure of information in this forum—particularly of the anonymized nature the Court is requiring—would compromise its interests in an arbitral forum.  It will be able to make exactly the same objections to the use of evidence obtained from other arbitrations that it has made after this Court's order than it did before this Court's order.  Finally, Defendant contends that other interested parties would not be injured by a stay pending appeal and that the public interest favors a stay because there is a strong federal policy in favor of protecting arbitral confidentiality.  *See* Dkt. No. 39 at 3.  But the point is precisely the opposite.  The public has a right of access to judicial documents under the common law and the First Amendment and that access trumps a blanket assertion of arbitral confidentiality.  And that interest is immediate.  *See Lugosch*, 435 F.3d at 113.  The public interest thus favors disclosure rather than secrecy.

For these reasons, in its discretion, the Court can find no basis for a stay and denies a stay of this decision pending appeal.

**CONCLUSION**

By January 10, 2022, the Court directs (1) Plaintiff to submit, under seal, redacted summary judgment motion papers (with the exception of exhibits to the declarations of Liss-Riordan) consistent with this Memorandum and Order; and (2) Defendant to submit, under seal,

a redacted response to Plaintiff's summary judgment statement of material facts consistent with this Memorandum and Order.  Assuming that the redacted motion papers are consistent with this Memorandum and Order, the Court will then unseal those redacted papers on the public docket no earlier than January 14, 2022 to allow either side to seek recourse in the event the Court has not balanced the relevant considerations appropriately.

The Court also directs the parties to meet and confer regarding the redactions to the exhibits to the declarations of Liss-Riordan consistent with this Memorandum and Order.  By January 10, 2022, Plaintiff shall provide Defendant with proposed redactions to the exhibits.  By January 14, 2022, Defendant shall raise any objections and the basis for those objections with Plaintiff.  By January 19, 2022, Plaintiff shall file on the docket, under seal, redacted exhibits to the declarations of Liss-Riordan and a letter indicating whether Defendant agrees that the redactions are consistent with this Memorandum and Order.  Defendant will be given until January 21, 2022, to submit a letter with any objections to the filed redactions and the basis for those objections so long as Defendant previously raised those objections with Plaintiff.

The Clerk of Court is respectfully directed to close Dkt. Nos. 13, 20, 22, 31, and 39.

SO ORDERED.

Dated: January 4, 2022
New York, New York

_____
LEWIS J. LIMAN
United States District Judge