```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
DENISE LOHNN, Executor of the Estate of Jorgen                   :
Lohnn, Deceased,                                                 :
                                                                 :
                             Plaintiff,                          :      21-cv-6379 (LJL)
                                                                 :
                -v-                                              :      OPINION AND ORDER
                                                                 :
INTERNATIONAL BUSINESS MACHINES CORP.,                           :
                                                                 :
                             Defendant.                          :
                                                                 :
-----------------------------------------------------------------X
```

LEWIS J. LIMAN, United States District Judge:

Plaintiff Denise Lohnn (as Executor of the Estate of Jorgen Lohnn, Deceased) ("Plaintiff") and defendant International Business Machines Corp. ("IBM" or "Defendant") have settled this case and have filed a joint stipulation of dismissal with prejudice, Dkt. No. 75, which was referred by the Clerk's Office to the Court for approval. Before the case is closed, the Court must address the issue of whether the declarations and exhibits filed in support of Plaintiff's motion for summary judgment will remain under seal or will be made publicly accessible with limited redactions consistent with the Court's January 4, 2022 Memorandum and Order regarding sealing. Dkt. No. 42. In light of the parties' settlement, Plaintiff takes no position on the issue. Dkt. No. 78 at 1. Defendant requests that the Court permit the joint stipulation of dismissal to be entered without taking any action regarding the declarations and exhibits. *Id.* For the following reasons, these filings will remain under seal.

## BACKGROUND AND PROCEDURAL HISTORY

Familiarity with the Court's January 4, 2022 Memorandum and Order regarding sealing is assumed. Dkt. No. 42. The Court will recount the relevant portions of its prior decision in

brief.  Defendant moved to maintain under seal certain documents filed in relation to Plaintiff's motion for summary judgment and to maintain certain redactions in other related documents.  *Id.* at 1.  The Court denied Defendant's motion to the extent it sought a blanket order maintaining under seal the documents and redactions, but the Court granted the motion to the extent IBM sought more limited redactions.  *Id.* at 2.  In particular, the Court held that the documents at issue were "judicial documents" because they were submitted in support of or in opposition to Plaintiff's pending motion for summary judgment and that, as documents submitted in connection with the pending motion, the weight of the presumption of access under both the common law and the First Amendment was of the "highest."  *Id.* at 16 (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006)).  Therefore, to keep the materials sealed, Defendant must present countervailing factors and interests of higher value sufficient for the Court to make specific, on-the-record findings why the requested sealing is necessary and narrowly tailored.  *Id.* at 19 (citing *Lugosch*, 435 F.3d at 124).  In the Memorandum and Order, the Court rejected Defendant's argument that, regardless of any other countervailing interest, all of the information disclosed or discussed in arbitration was entitled to continued sealing by virtue of the fact alone that the parties had signed a confidentiality agreement governing the arbitration.  *Id.* at 19–37.[1]  The Court noted that the confidentiality provision was intended only to protect "proprietary information, trade secrets or other sensitive information" and that it was qualified in a significant respect:  It expressly permitted the parties to disclose confidential information as necessary "in connection with a court application for a preliminary remedy, [or in connection with] a judicial challenge to an award or its enforcement."  *Id.* at 5 (quoting Dkt. No.

---

[1] There is long line of cases rejecting the proposition that the federal policy in favor of arbitration is alone sufficient to justify continued sealing of judicial documents.  *See id.* at 27–28 (citing decisions by Judges Gardephe, Furman, Sullivan, Oetken, Swain, Arterton, and Castel).

30-1). For almost all redactions, Defendant did not make any narrowly tailored requests for confidentiality but instead insisted on a blanket basis that, if information was exchanged in a confidential arbitration, it must *ipso facto* be kept confidential in the litigation regardless whether its disclosure would compromise any other legitimate interest of Defendant or any third party. *Id.* at 9. The Court, however, agreed with Defendant that the disclosure of certain pieces of information would compromise privacy interests. *Id.* at 37–40. The Court thus ordered the parties to submit redacted summary judgment motion papers (with the exception of the exhibits to the declarations of Plaintiff's counsel) consistent with its decision. *Id.* at 41–42. The Court separately directed the parties to meet and confer regarding redactions to the exhibits consistent with the decision and set forth a separate schedule for filing those proposed redactions. *Id.* at 42. The Court denied Defendant's request for a stay of its decision pending appeal. *Id.* at 40–42.

On February 10, 2022, the Court ordered the parties to file on the public docket by the next day the summary judgment papers with limited redactions consistent with the Court's January 4, 2022 decision. Dkt. No. 53. The Order noted that "[t]he Court will address in a separate order the proposed redactions to the declarations of [Plaintiff's counsel] and the exhibits to those declarations." *Id.* at 2. The summary judgment papers (except for the specified declarations and exhibits) were publicly filed with redactions the next day. Dkt. Nos. 58–61.

On March 31, 2022, before the Court had the opportunity to address the proposed redactions to the declarations and exhibits, the parties jointly moved to stay the case, noting that the parties had reached a tentative resolution and requesting that the Court "issue no further decisions, including any decisions relating to the January 4, 2022 Order (Dkt. No. 42), Plaintiff's pending motion for summary judgment (Dkt. Nos. 58, 60), and/or Defendant's pending motion to dismiss (Dkt. Nos. 25-26, 41)." Dkt. No. 63. The Court granted the request and stayed the

case.  Dkt. No. 64.  The parties subsequently filed several joint status reports and requests to extend the stay, which the Court granted.  Dkt. Nos. 65–68, 71–73.

On July 18, 2022, the parties filed a joint stipulation of dismissal with prejudice, Dkt. No. 75, and the Clerk's Office referred the stipulation to the Court for approval.  The next day, the Court directed the parties to file a joint letter addressing whether there were any reasons why the Court should not now consider the proposed redactions to the declarations of Plaintiff's counsel and exhibits filed in connection with Plaintiff's summary judgment motion before the Court lifted the stay in the case and so-ordered the stipulation of dismissal.  Dkt. No. 76.

On August 9, 2022, the parties filed a joint letter as directed.  Dkt. No. 78.  Plaintiff does not take a position on the issues relating to unsealing in light of the parties' settlement.  *Id.* at 1. Defendant argues that, in light of the parties' settlement and stipulated voluntary dismissal, the declarations and exhibits "are not judicial documents subject to the presumption of public access because the Article III judicial power was not—and now cannot be—exercised as to those materials."  *Id.*  In addition, Defendant argues that "any presumption of public access in this situation would be weak and easily overcome (given the important judicial interests in encouraging settlement)."  *Id.*  Defendants therefore request that the Court permit the joint stipulation of dismissal to be entered without taking any action regarding the declarations and exhibits.  *Id.*

## DISCUSSION

"The common law right of public access to judicial documents is firmly rooted in our nation's history."  *Lugosch*, 435 F.3d at 119.  This right of immediate public access to judicial documents is "based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice."  *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*")); *see also United States v. Erie Cnty.*,

4

*N.Y.*, 763 F.3d 235, 238–39 (2d Cir. 2014) ("The notion that the public should have access to the proceedings and documents of courts is integral to our system of government. To ensure that ours is indeed a government of the people, by the people, and for the people, it is essential that the people themselves have the ability to learn of, monitor, and respond to the actions of their representatives and their representative institutions.").

"Before any such common law right can attach, however, a court must first conclude that the documents at issue are indeed 'judicial documents.'" *Lugosch*, 435 F.3d at 119. "Once the court has determined that the documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption." *Id.* "Finally, after determining the weight of the presumption of access, the court must balance competing considerations against [disclosure]," *id.* at 120 (internal quotation marks omitted), and only when countervailing interests outweigh the presumption may access be denied, *id.* at 119–20.

Contrary to Defendant's argument, the declarations and exhibits submitted in connection with Plaintiff's motion for summary judgment are judicial documents. "A 'judicial document' or 'judicial record' is a filed item that is 'relevant to the performance of the judicial function and useful in the judicial process.'" *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016) (quoting *Lugosch*, 435 F.3d at 119). "A document is . . . 'relevant to the performance of the judicial function' if it would reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019). Here, Plaintiff submitted the declarations and exhibits in support of her motion for summary judgment; in other words, the

5

documents were filed to influence the Court's ruling on that motion and thus were relevant and useful to the performance of the judicial function.

That the case later settled and the motion was never adjudicated does not change the fact that the declarations and exhibits are judicial documents. A determination that a filing in support of a motion for summary judgment constitutes a judicial document does not await the Court's ultimate decision on the motion for summary judgment. *Lugosch*, 435 F.3d at 120–21. The character of the documents at the time of filing is what matters when determining if the documents are judicial documents; a document is a judicial document from the moment of filing—when a party asks the Court to rely on the document when ruling. In *Lugosch*, the Second Circuit held that, "[a]s a matter of law," the "contested documents—by virtue of *having been submitted to the court* as supporting material in connection with a motion for summary judgment—are unquestionably judicial documents under the common law." 435 F.3d at 123 (emphasis added).

Moreover, their character as judicial documents does not change with subsequent developments. The Second Circuit in *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP* held that a complaint, once filed, is a judicial document and explained that "[t]he fact that a suit is ultimately settled without a judgment on the merits does not impair the 'judicial record' status of pleadings." 814 F.3d at 140. "[P]leadings—even in settled cases—are Judicial records subject to a presumption of public access." *Id.* The court reasoned that, even though settlement precludes adjudication on the merits of the pleadings, "the fact of filing a complaint, whatever its veracity, is a significant matter of record," and inspection of the pleadings allows the public to monitor the judiciary. *Id.* Though the Second Circuit has not squarely addressed whether the principle in *Bernstein*—that settlement or non-adjudication on the merits does not change the

6

status of a filing as a judicial document—extends beyond pleadings, courts in this Circuit have held that the principle is not limited to pleadings. For example, in *Dawson v. Merck & Co.*, 2021 WL 242148, at *6 (E.D.N.Y. Jan. 24, 2021), the court held that documents attached to a *Daubert* motion are "judicial documents to which a presumption of access immediately attached and remains attached notwithstanding settlement by the parties." The court reasoned that, "[a]lthough documents in connection with motions are not as central to a case as pleadings, the factors the Second Circuit in *Bernstein* identified as favoring the post-settlement survival of the presumption of access for pleadings apply with similar force to motions." *Id.* at *5. Once a judicial document is filed on the docket, "the presumption of access attaches . . . and does not disappear." *Id.* "To conclude otherwise would permit the parties in a case to summarily close the curtain on the public's view into the judicial branch of government without the court's ability to weigh the presumption of access against any countervailing interests. The continuing presumption of access allows the public to see what is going into the sausage factory, even if a particular sausage is never made." *Id.* Similarly, courts have held that settlement before a decision on a petition to confirm an arbitration award does not obviate the judicial document status of the documents filed in connection with the petition. *See, e.g.*, *Eagle Star Ins. Co. v. Arrowood Indem. Co.*, 2013 WL 5322573, at *2 (S.D.N.Y. Sept. 23, 2013) ("At the time of filing, the petition to confirm, the documents attached to that petition, as well as the motion to dismiss were filed for the Court's consideration in ultimately adjudicating the case. As such, they are judicial documents. Simply because the parties later filed a stipulation of dismissal does not mean that the parties did not invoke the judicial power upon the initial filing of these documents." (citations omitted)); *Susquehanna Int'l Grp. Ltd. v. Hibernia Express (Ireland) Ltd.*, 2021 WL 3540221, at *3 (S.D.N.Y. Aug. 11, 2021) ("Here, the Exhibits – the Final Arbitration

Award, the Partial Final Arbitration Award, and the MSA between the parties – directly affect the adjudication of the Petition, and are therefore judicial documents. That the Court need not decide the merits of the Petition does not change the fact that the Exhibits are judicial documents." (citation omitted)). Further, that the time of filing is the key moment at which to determine whether something is a judicial document accords with the Second Circuit's holding in *Lugosch* that "a presumption of *immediate* public access attaches" to judicial documents and that district courts should make their findings as to sealing "quickly" for there to be any right to "contemporaneous access." *Id.* at 126 (emphasis added).

Defendant cites to *In re IBM Arbitration Agreement Litigation*, 2022 WL 3043220 (S.D.N.Y. Aug. 2, 2022), and *Giuffre v. Maxwell*, 2020 WL 133570 (S.D.N.Y. Jan. 13, 2020), *reconsideration denied*, 2020 WL 917057 (S.D.N.Y. Feb. 26, 2020), to support its argument that the documents here are not judicial documents. The Court respectfully disagrees with the conclusions reached by the district courts in those cases. The court in *In re IBM* held that the plaintiffs' summary judgment papers were not judicial documents because the court resolved the case on IBM's motion to dismiss and thus determined that the summary judgment papers were neither relevant to the performance of the judicial function nor useful in the judicial process. 2022 WL 3043220, at *2. The court there reiterated the Second Circuit's statement that "the mere filing of a paper or document with a court is insufficient to render that paper a judicial document subject to the right of public access." *Id.* at *3 (quoting *Lugosch*, 435 F.3d at 119). The court, however, took that dictum out of its context. It is true that filing alone is insufficient for a document to become a judicial document, but, as discussed, the "item filed must be relevant to the performance of the judicial function and useful in the judicial process," *Lugosch*, 435 F.3d at 119 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*")), and

8

this inquiry looks to the time when the item is filed and not at some later point in time—e.g., after a dispositive motion is adjudicated. *Lugosch* itself rejected the argument that a district court should wait to rule on a sealing motion until the merits of a motion are considered, *see id.* at 120–21; instead, district courts are to "act expeditiously" on the sealing inquiry (including the question of whether a document is a judicial document), *id.* at 126. The Second Circuit's statement in *Lugosch*, quoting *Amodeo I*, is best understood to reflect the view that the filing of a paper in court is not sufficient to make the paper a judicial document (i.e., not every extraneous document uncovered during discovery and then filed with the court is a judicial document). It cannot be understood to reflect the view that what would otherwise be a judicial document because it asks a court for ultimate relief does not partake of that character until after the court has acted upon it.

Likewise, in *Giuffre v. Maxwell*, the court faced a similar question as exists here— whether the undecided motions and relevant documents in a settled litigation are judicial documents to which a right of access attaches. 2020 WL 133570, at *2. The *Giuffre* court concluded that the documents were not judicial documents because "there was never, and now never can be, a judicial decision-making process" with respect to those documents. *Id.* In deciding that the documents at issue were not judicial documents, the *Giuffre* court expressly considered the approach adopted by the Court in this case; however, "considering the lack of clear guidance from the Court of Appeals," the *Giuffre* court chose "the path that adheres most closely to the overarching purpose of the presumption of public access"—"[t]hat is, the presumption exists to monitor judicial *decision-making*." *Id.* at *3. Thus, the court held that the documents that "cannot result in a judicial act of any sort" were not judicial documents. *Id.*

The *Giuffre* court's reasoning conflates the first two steps of the common law framework: (1) whether a document is a judicial document; and (2) the weight of the presumption of access. The factors considered by the *Giuffre* court—relationship between the documents and the exercise of Article III judicial power and monitoring the courts—speak to the weight of the presumption rather than whether the documents are judicial documents in the first place. *Compare Brown*, 929 F.3d at 49 (explaining how weight of presumption is governed by "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts" (quoting *Amodeo II*, 71 F.3d at 1049)), *with Bernstein*, 814 F.3d at 139 (defining judicial document as "a filed item that is 'relevant to the performance of the judicial function and useful in the judicial process'" (quoting *Lugosch*, 435 F.3d at 119)). Admittedly, the two inquiries overlap to a certain extent. But the determination of whether a document is a judicial document is a broader, threshold inquiry that only asks if the document is "relevant" and "useful" to the judicial process rather than engaging the more exacting inquiry about the document's specific role in the exercise of judicial power and the value of the document to monitoring. The *Giuffre* court expressed concern that following an alternative approach—that "any document that (1) has been filed with a court; (2) requests some manner of relief; and (3) comes to a judge's attention in any way, is a judicial document, whether decided, undecided, justiciable, or nonjusticiable"—would "effectively obliterate any limitation on what can be afforded the presumption of public access" because "practically every paper filed with the Court would be judicial in nature" and would "fl[y] in the face of the Court of Appeals' directive that 'the mere filing of a paper or document with the court is insufficient to render that paper a judicial document.'" 2020 WL 133570, at *4 (quoting *Amodeo I*, 44 F.3d at 145). But the alternative approach would still exclude the large category of "[d]ocuments that play no role

in the performance of Article III functions, such as those passed between the parties in discovery." *Amodeo II*, 71 F.3d at 1050; *see also id.* at 1048 (recognizing that "[u]nlimited access to every item turned up in the course of litigation would be unthinkable"). Regardless of the fact of settlement, such documents "stand on different footing than . . . a motion filed by a party seeking action by the court, or, indeed, than any other document which is presented to the court to invoke its power or affect its decisions." *Id.* at 1050 (cleaned up). And limitations would also arise from a court's determination of whether the documents filed were "relevant" and "useful" and from the weight of the presumption that attached to the judicial document.

Because the declarations and exhibits at issue are judicial documents to which a presumption of access attaches, the Court must ascertain the weight of that presumption. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Brown*, 929 F.3d at 49 (quoting *Amodeo II*, 71 F.3d at 1049). "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Amodeo II*, 71 F.3d at 1049. "Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." *Id.* at 1050.

Here, the weight of the presumption of access to the declarations and exhibits filed in support of Plaintiff's summary judgment motion is low. The parties announced their settlement before the Court had the opportunity to adjudicate Plaintiff's motion for summary judgment. Because a decision will never be rendered on the summary judgment motion, the declarations

and exhibits filed in support "play only a negligible role in the performance of Article III duties," *id.* at 1050, namely the adjudication of a motion. That a decision will never be rendered on the summary judgment motion is decidedly different from the situation where a court has *not yet* ruled on a pending motion for summary judgment or has already adjudicated the motion. In those situations, the weight of the presumption of access will be strong and "of the highest."[2] *Lugosch*, 435 F.3d at 123. The public has an interest in monitoring the courts both before a decision is made (when an interested party might consider a motion to intervene or the filing of an amicus brief) and after a decision is made (when the information before the court will be of historical value). Neither interest is implicated here. There is not now any public interest in access to documents that might form the basis of a judicial decision. In addition, the other summary judgment papers (e.g., the briefs and the Local Rule 56.1 statements) have already been unsealed, and the information in the sealed declarations and exhibits overlap heavily with the information in the unsealed filings and provide only marginal value to those monitoring the federal courts. Since the declarations and exhibits will not play a role in the exercise of judicial power and only provide marginal additional monitoring value, the presumption of access is low.

  The low presumption of access here must now be balanced against the countervailing interests against disclosure. The Court holds that the countervailing interest of encouraging settlement overcomes the low presumption of access in this case. Where the weight of the presumption is low, it "amounts to little more than a prediction of public access absent a

---

[2] The Court recognizes that it may seem perverse that the weight of the presumption of access could vary depending on when a court acts upon a sealing motion. For example, if a court delays in ruling on a motion to seal certain summary judgment filings and the parties settle the case during that delay, the weight of the presumption is lower than had the court ruled on the sealing motion quickly while the summary judgment motion was still pending. But this perversity simply reinforces the notion that district courts should act on sealing motions quickly. *Lugosch*, 435 F.3d at 126.

countervailing reason." *Amodeo II*, 71 F.3d at 1050. "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" *Lugosch*, 435 F.3d at 120 (quoting *Amodeo II*, 71 F.3d at 1050). Judicial efficiency encompasses the use of settlement to resolve an action. "[C]ourts favor the policy of encouraging voluntary settlement of disputes." *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 997 (2d Cir. 1983) (collecting cases); *cf.* Fed. R. Civ. P. 1 (providing that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"). Here, the Court granted the parties' request to stay the case and to have the Court refrain from issuing further decisions in the matter to facilitate their voluntary resolution of the case. Dkt. No. 63. Given the low weight of public access to the declarations and exhibits at issue here, the Court concludes that the interest in encouraging settlement and enhancing judicial efficiency is "a countervailing reason" that counsels against disclosure.[3]

In summary, the declarations and exhibits filed in support of Plaintiff's summary judgment motion are judicial documents to which a presumption of access attaches, but the weight of the presumption is low where the case was settled prior to adjudication of the summary

---

[3] The Court notes that the district court in *Bernstein* concluded that "the general value of preserving settlements" was not sufficient to overcome the "considerable but not overwhelming presumption of access" to the complaint filed in that case. *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 2016 WL 1071107, at *13, *15 (S.D.N.Y. Mar. 18, 2016), *aff'd*, 814 F.3d 132 (2d Cir. 2016). But the weight of the presumption of access here (to the declarations and exhibits to a summary judgment motion where the briefs and the Local Rule 56.1 statements have already been disclosed) is far weaker than it was there. *See* 814 F.3d at 140 (noting that even in a settlement context the inspection of pleadings permits the public to "discern the prevalence of certain types of cases, the nature of the parties to particular kinds of actions, information about the settlement rates in different areas of law, and the types of materials that are likely to be sealed" (internal quotation marks and citations omitted)).

judgment motion.  In the Court's view, the countervailing interests in favor of encouraging settlement are sufficient to overcome the low presumption of access to these documents.[4]

## CONCLUSION

For these reasons, the declarations and exhibits at issue will remain under seal.  The Clerk of Court is respectfully directed to lift the stay in this case.  The Court will so-order the stipulation of voluntary dismissal filed by the parties and referred by the Clerk's Office to the Court for approval.

SO ORDERED.

Dated: August 15, 2022
       New York, New York

_____
LEWIS J. LIMAN
United States District Judge

---

[4] No party, intervenor, or amicus has raised the question of whether a First Amendment right of access applies to the declarations and exhibits filed in support of a motion for summary judgment after the case has settled and where no adjudication will be made on that motion.  The Court therefore does not address that question.  *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140 n.4 (2d Cir. 2004) ("Because a First Amendment right of access has not been asserted by any party, *amicus*, or the district court, we do not address the issue.").  The Court finds it unnecessary to rule on this constitutional question when the question has not been presented to it.  However, the Court's decision to keep these declarations and exhibits sealed is without prejudice to a motion by an intervenor to unseal the documents on First Amendment grounds.